# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

PHILLIP R. GARBACK,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:18-cv-168
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Phillip R. Garback brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's statement of errors (Doc. 11), the Commissioner's response in opposition (Doc. 16), and plaintiff's reply memorandum (Doc. 17).

## I. Procedural Background

Plaintiff filed his application for DIB in July 2016, alleging disability since December 28, 2015, due to degenerative disc disease of the cervical and lumbar spines, degenerative joint disorder of the knee post left total knee replacement in 2006, exercise induced asthma, and sleep apnea and REM sleep disorder. The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was afforded a hearing before administrative law judge ("ALJ") Gregory Kenyon on August 30, 2017. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. On November 1, 2017, ALJ Kenyon issued a written decision denying plaintiff's application. Plaintiff's request for review by the Appeals Council was denied, making the decision of ALJ Kenyon the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

2

the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2018.

2. The [plaintiff] has not engaged in substantial gainful activity since December 28, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The [plaintiff] has the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, avascular necrosis of the hips, obstructive sleep apnea, residuals of a right foot fracture, residuals of left knee replacement surgery, chronic obstructive pulmonary disease ("COPD"), and carpal tunnel syndrome (20 CFR 404.1520(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: (1) frequent crouching, crawling, stopping, balancing, and climbing of ramps or stairs; (2) no climbing of ladders, ropes and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) frequent use of hands for handling and fingering; (5) no concentrated exposure to temperature extremes or respiratory irritants; and (6) limited to performing unskilled, simple, repetitive tasks.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[1]

7. The [plaintiff] was born [in] . . . 1963 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

---

[1] Plaintiff has past relevant work as a department store stocker and nurse. (Tr. 19).

3

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from December 28, 2015, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 12-20).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[2] The ALJ relied on the VE's testimony that plaintiff would be able to perform the requirements of representative light unskilled jobs in the national economy such as storage facility rental clerk (75,910 jobs nationally), office helper (83,250 jobs nationally), and parking lot attendant (36,860 jobs nationally). (Tr. 20, 61).

4

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ erred at steps four and five of the sequential evaluation process by finding that plaintiff could frequently use his hands for handling and fingering, and (2) the ALJ erred by interpreting raw medical data in functional terms. (Doc. 11). Both assignments of error relate to the ALJ's RFC assessment; therefore, the Court will consider plaintiff's two assignments of error together.

In his first assignment of error, plaintiff alleges the ALJ erred in finding that he could "frequently" use his hands for handling and fingering. (Doc. 11 at 8). Plaintiff contends "[t]he objective and subjective evidence more reasonably supports a limitation to *occasional* use of the hands for handling and fingering, which would still require [plaintiff] to use his hands for up to one-third of the workday but would direct a finding of disability pursuant to the [VE]'s testimony." (*Id.* at 10) (emphasis added). In this regard, plaintiff argues that the ALJ's decision is too narrow and fails to adequately consider the following evidence related to plaintiff's hand

impairment: (1) a November 2015 physical examination revealing decreased sensation of the fingers, ulnar hand, distal forearm, ulnar forearm, and arm, and positive Phalen's test (Tr. 301); (2) muscle aches, weakness, arthralgias/joint pain, back pain, and "swelling in the extremities" throughout 2016 and 2017 (Tr. 263, 267, 276, 475, 519, 523, 527, 530, 534, 538, 552, 556, 561, 565, 569, 691, 695); (3) findings from October 2016 showing persistent numbness/tingling in the 4th and 5th digits of his bilateral hands (Tr. 475); (4) complaints of severe numbness and weakness, and a history of peripheral neuropathy (Tr. 629); (5) a November 2016 physical examination revealing weakness in both upper extremities and diminished sensation in the right hand, left hand, right ulnar digits, and left ulnar digits (Tr. 630); (6) manual muscle testing revealing marked atrophy and motor strength of 3/5 in bilateral hand intrinsics and testing revealing positive Tinel's test on the right ulnar groove (Tr. 639); and (7) a November 2016 EMG revealing "[s]evere demyelinating neuropathy of ulnar nerves from the upper arms down with focal muscle membrane instability of the Right abductor digiti minimi muscle suggests ongoing denervation" (Tr. 627, 639). (Doc. 11 at 8-9). Plaintiff contends he is more limited by his hand impairment than the ALJ found and, as a result, the ALJ erred at step five of the sequential evaluation process in determining that he could perform a significant number of jobs in the national economy. (*Id.*).

In his second assignment of error, plaintiff argues the ALJ erred in affording substantial weight to the state agency reviewing physicians who did not review or mention the October 2016 EMG of his hands or the July 2017 MRI of his hip. (*Id.* at 11). Plaintiff alleges the ALJ failed to explain whether the objective imaging impacted the ultimate weight he afforded the opinions of the state agency reviewing physicians. (*Id.*). In this regard, plaintiff argues that the ALJ improperly interpreted raw medical data to formulate the RFC. (*Id.*).

6

The Commissioner argues that the ALJ carefully considered all of the record evidence when assessing plaintiff's RFC and fully accounted for plaintiff's limitations. (Doc. 16 at 3). The Commissioner contends that the ALJ appropriately discredited plaintiff's subjective allegations of an inability to perform light work based on the lack of significant medical findings or objective evidence supporting plaintiff's complaints and the lack of consistency of plaintiff's complaints with his activities. (*Id.* at 4). The Commissioner also argues that the ALJ appropriately considered plaintiff's conservative treatment and noted that it was effective in alleviating his alleged pain. (*Id.* at 6). The Commissioner further contends that the ALJ reasonably relied on the state agency reviewing opinions in determining the severity of plaintiff's subjective complaints and constructing the RFC. (*Id.* at 8).

The ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009)). *See also* 20 C.F.R. § 404.1546(c) (the responsibility for assessing a claimant's RFC lies with the ALJ). It is the ALJ's duty to fashion an RFC based on all of the evidence of record. "The [Commissioner], and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990). The ALJ can fulfill his obligation "without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (citations and internal quotation marks omitted)).

In this case, the ALJ gave plaintiff an RFC for light work with some postural and environmental limitations. (Tr. 13-14). There was no opinion evidence from plaintiff's treating physicians, and the state agency physicians opined that plaintiff is limited to light exertional work. (Tr. 71-73, 82-84). In the RFC, the ALJ determined that plaintiff could engage in the "frequent use of hands for handling and fingering." (Tr. 13). In discussing plaintiff's hand impairment, the ALJ stated:

> Finally, the [plaintiff] has a history of carpal tunnel syndrome (Exhibits 8F/12, 19 and 10F/5). The [plaintiff] underwent bilateral carpal tunnel release surgery [ ] prior to the alleged onset date. (Exhibits 1F, 2F, 8F and 15F). The [plaintiff] alleges pain, numbness, tingling, weakness in [his] hands and fingers (Exhibits 4F, 6E and 10F). Physical examination revealed decreased sensation in the fingers and forearms bilaterally, weakness in the fingers, and diminished reflexes (Exhibits 1F and 10F). Nevertheless, since the alleged onset date, the [plaintiff] has not received any treatment for this condition, only diagnosis (Exhibit 10F). More importantly, since the alleged onset date, the [plaintiff] has only complained to a treatment provider about symptoms related to this condition in October and November 2016 (Exhibits 4F and 10F).

(Tr. 18).

The ALJ's RFC determination and assessment of plaintiff's hand impairment are supported by substantial evidence. In assessing the RFC, the ALJ evaluated the relevant medical evidence related to plaintiff's carpal tunnel syndrome and reasonably concluded that plaintiff could perform the physical requirements of light work. The ALJ did not ignore the abnormal findings related to plaintiff's carpal tunnel syndrome. The ALJ noted that plaintiff underwent carpal tunnel release surgery prior to the alleged onset date. The ALJ also noted that plaintiff's physical examinations revealed decreased sensation in the fingers and forearms bilaterally, weakness in the fingers, and diminished reflexes and cited to many of the same records that plaintiff contends support greater restrictions. (Tr. 18) (citing Exhibits 1F (Tr. 254-307), 10F (Tr. 623-48)). In addition, contrary to plaintiff's argument, the ALJ considered medical records

8

that included his November 2016 EMG results. (Tr. 18) (citing Exhibit 10F/5 [Tr. 627]). Nevertheless, the ALJ noted that plaintiff had only received a diagnosis and no treatment for his carpal tunnel syndrome and related symptoms of hand pain since his alleged onset date. The ALJ also reasonably noted that subsequent to the alleged onset date plaintiff had only complained to his treatment provider about symptoms related to his carpal tunnel syndrome on two occasions – in October and November 2016. (Tr. 18). None of the records that post-date the November 2016 EMG show that plaintiff received any medical treatment for his hand impairment. Nor do these records suggest the EMG findings support greater restrictions than those imposed by the ALJ. The ALJ did not fail to consider the evidence relevant to plaintiff's hand impairment.

In addition, the ALJ did not err by giving substantial weight to the opinions of the non-examining state agency physicians as plaintiff alleges. Where, as here, the record does not include a treating or examining physician's medical opinion, the ALJ's decision to credit a non-examining source's opinion withstands scrutiny "[s]o long as the ALJ's decision adequately explains and justifies" the disability determination as a whole. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) ("While perhaps the ALJ could have provided greater detail, particularly as to why the nonexamining opinions were more consistent with the overall record, the ALJ was under no special obligation to do so insofar as he was weighing the respective opinions of nontreating versus nonexamining sources.") (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). In addition, it is not necessary that a non-treating source's opinion be "based on a 'complete' or 'more detailed and comprehensive' case record" in order for the ALJ to credit the opinion. *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (citing SSR 96-6p, 1996 WL 374180,

\*2). "There will always be a gap between the time the agency experts review the record . . . and the time the hearing decision is issued." *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009). The ALJ can reasonably credit the opinion of non-examining state agency physicians, despite their lack of access to the entire record, "if their conclusion that [the claimant] retained the capacity to work was supported by the totality of the medical and vocational evidence in the record." *Glasgow v. Comm'r of Soc. Sec.*, 690 F. App'x 385, 387 (6th Cir. 2017) (citing *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (concluding that an ALJ may rely on a non-examining state agency physician's opinion that is not based on all of the medical evidence in the record "if the ALJ takes into account any evidence that the physician did not consider")). *See also Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (where the "ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record," it is only necessary that the record provide "some indication that the ALJ subjected such an opinion to scrutiny."). "Absent a clear showing that the new evidence renders the prior opinion untenable," the mere fact that the non-examining physician did not have a complete record before him "does not warrant the expense and delay of a judicial remand." *Kelly*, 314 F. App'x at 831.

The ALJ gave "substantial weight" to the assessments of state agency reviewing physicians Drs. Manos and Siddiqui. (Tr. 19). Dr. Diane Manos, M.D., completed an RFC assessment on September 27, 2016 and assessed that plaintiff was capable of light work. (Tr. 70-71). After plaintiff supplied additional evidence, Dr. Mehr Siddiqui, M.D., completed an RFC assessment at the reconsideration level on February 1, 2017. Dr. Siddiqui affirmed Dr. Manos' assessment of plaintiff's exertional limitations, but revised plaintiff's postural limitations to prohibit plaintiff from climbing ladders, ropes, or scaffolds. (Tr. 82-83). The ALJ

found that the assessments of Drs. Manos and Siddiqui were "consistent with the [plaintiff]'s activities of daily living, his presentation at [the] hearing and assertion in his Function Report that he can lift 30 pounds." (Tr. 19) (citing Tr. 203). The ALJ also imposed environmental limitations and further limited plaintiff to "frequent" use of his hands for handling and fingering. (Tr. 19).

Plaintiff argues that the ALJ's RFC is not substantially supported because Drs. Manos and Siddiqui rendered their opinions without reviewing the November 2016 EMG of his hand and the July 2017 MRI of his hip. However, plaintiff has not presented any medical opinion evidence from a treating or examining physician to show that these objective findings imposed greater restrictions on his functioning than the ALJ included in the RFC findings. The ALJ considered the November 2016 EMG evidence (Tr. 18, citing Exhibit 10F/5 [Tr. 627]), but reasonably noted that subsequent to the alleged onset date plaintiff had not received any treatment for his carpal tunnel syndrome and had only complained to a treatment provider about his symptoms in October and November 2016. (Tr. 18). The ALJ's imposition of a "frequent" limitation, as opposed to the "occasional" limitation advanced by plaintiff, on plaintiff's ability to handle and finger is not unreasonable in light of the record as a whole.

Likewise, the ALJ considered the July 14, 2017 MRI of the hips. The ALJ noted that plaintiff had not complained about hip pain prior to the MRI. In addition, the ALJ noted an inconsistency in plaintiff's use of a cane. In July 2017, plaintiff reported he used a cane to ambulate. (Tr. 743). However, plaintiff's use of a cane was not documented elsewhere in the record and plaintiff did not use a cane to ambulate at the hearing in August 2017. (Tr. 16). Moreover, less than one week after the MRI, a musculoskeletal examination showed plaintiff had normal motor strength and tone, normal movement of all extremities, and no malalignment

11

and that plaintiff ambulated normally. (Tr. 733). The ALJ did not err by "interpreting raw medical data in functional terms," as plaintiff contends. Rather, the ALJ conducted a thorough review of the medical evidence, including the evidence that post-dated the assessments of the state agency reviewing physicians, and gave valid reasons for the weight he afforded these opinions. The November 2016 EMG and July 2017 MRI results do not render the non-examining physicians' opinions and the ALJ's reliance on those opinions "untenable." *See Kelly*, 314 F. App'x at 831. The burden lies with plaintiff to prove that he is disabled and that his EMG and MRI results caused greater limitations than the ALJ assessed. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Plaintiff has not pointed to a medical opinion or any additional evidence in the record not considered, including diagnostic test results or examination findings, that show the ALJ was bound to incorporate additional functional limitations into the RFC to account for plaintiff's impairments.

Finally, plaintiff alleges that the objective medical evidence of his carpal tunnel syndrome supports his testimony at the ALJ hearing describing his hand numbness. However, as stated above, the ALJ reasonably evaluated the objective medical evidence of plaintiff's carpal tunnel syndrome in forming the RFC. The ALJ also reasonably determined that plaintiff's complaints of disabling pain and limitations were inconsistent with his daily activities. The ALJ noted that plaintiff prepares meals, performs household chores, goes to the grocery store, performs self-care, exercises, and worked part-time. (Tr. 18). In addition, plaintiff had no difficulty sitting or rising at the hearing and did not appear to be in pain. (*Id.*). He also did not use an ambulatory device at the hearing despite previously reporting that he used a cane. (*Id.*). The ALJ also noted treatment records showing that plaintiff "engages in 150 minutes of moderate intensity exercise per week and muscle strengthening activities two or

more days per week." (Tr. 15, citing Tr. 655). The ALJ reasonably determined that plaintiff's allegations of disabling pain and limitations were inconsistent with the record as a whole. Where, as here, the ALJ's assessment of plaintiff's credibility is supported by substantial evidence, the Court affords great weight and deference to the ALJ's finding. *Walters*, 127 F.3d at 531. Plaintiff's assignments of error should be overruled.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.

Date: 2/12/19

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PHILLIP R. GARBACK,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:18-cv-168
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).